UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| AARON CAMPBELL, | ) | |
| | ) | |
| Petitioner, | ) | No. 5:20-CV-508-REW-HAI |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| DAVID GREEN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

*** *** *** ***

On December 21, 2020, state prisoner Aaron Rashad Campbell filed a *pro se* petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus, accompanied by a memorandum. D.E 1. The undersigned recommends that it be denied.

**I.**

Campbell was indicted in two separate state cases for two separate robberies involving the same victim. The Kentucky Supreme Court described the background as follows:

> In August 2009, intruders entered David Norris's home, tied him up, hit him in the head, and robbed him of $70,000. A police investigation failed to produce any suspects for over a year.

> Norris was robbed at home again in October 2010. This time, two men entered his home, tied him up, and made off with his credit card. Police began another investigation, aided in this instance by surveillance videos of individuals using credit cards at local stores and by Crimestoppers. Within a short time, Michael Washington emerged as a suspect.

> Washington eventually confessed to the crime and implicated Campbell, his cousin, as the other participant. After arresting Campbell, police questioned him about the robbery multiple times. Ultimately, Campbell confessed to being involved. In light of the information gained from Campbell's statement, police became suspicious that Washington and Campbell were involved in the earlier robbery of Norris's home. Forensic evidence verified this suspicion. Campbell eventually confessed to the second robbery, as well.

Campbell was separately indicted for each robbery of Norris's home. Before trial, Campbell filed a motion to suppress both of his confessions on grounds that police made promises of leniency and coerced him into confessing. The trial court denied Campbell's motions following a hearing. As a result, Campbell entered a conditional guilty plea, reserving the right to appeal the trial court's decision. For the 2010 robbery, Campbell pleaded guilty to second-degree robbery and was sentenced to ten years' imprisonment. And for the 2009 robbery, Campbell pleaded guilty to first-degree robbery and being a second-degree Persistent Felony Offender (PFO 2) and, accordingly, was sentenced to twenty years' imprisonment. Campbell's sentences were ordered to run consecutively.

*Campbell v. Comm.* ("*Campbell I*"), No. 2014-SC-140-MR, 2015 WL 5652016, at *1 (Ky. Sept. 24, 2015).

Campbell appealed to the Kentucky Supreme Court, challenging the pretrial denial of his motion to suppress his confessions. The Kentucky Supreme Court affirmed, finding that "[b]ecause Campbell's will was not overborne during his various discussions with police, the trial court did not err in denying Campbell's motion to suppress." *Campbell I*, at *5. Campbell did not seek certiorari with the United States Supreme Court.

Campbell then filed a postconviction motion, arguing ineffective assistance of trial counsel ("IAC"). A public attorney was appointed to represent Campbell. But that lawyer withdrew under KRS § 31.110(2)(c) after determining the proceeding was not one "that a reasonable person with adequate means would be willing to bring at his or her own expense." *Campbell v. Comm*. ("*Campbell II*"), No. 2016-CA-1666-MR, 2018 WL 297262, at *2 (Ky. Ct. App. Jan. 5, 2018). Campbell proceeded with the motion *pro se*. The Kentucky Court of Appeals ultimately upheld the trial court's denial of relief. *Id*. The Kentucky Supreme Court denied discretionary review.

Finally, Campbell then filed a second postconviction motion. He argued that a witness at the suppression hearing had committed perjury and that the courts had made a factual error in his

2

prior postconviction proceedings. The Kentucky Court of Appeals upheld the trial court's denial of relief. *Campbell v. Comm.* ("*Campbell III*"), No. 2018-CA-1884-MR, 2020 WL 507620, at *4 (Ky. Ct. App. Jan. 31, 2020). The Kentucky Supreme Court denied discretionary review.

Campbell now raises six grounds for relief, challenging some of the state courts' determinations concerning his direct appeal, his first postconviction motion brought under Ky. R. Crim. P. 11.42, and his second postconviction motion brought under Ky. R. Civ. P. 60.02. The Warden has responded in opposition to the motion (D.E. 14) and attached filings from the state court record, as well as videos from state court hearings (D.E. 19). Campbell filed a reply. D.E. 22.

Campbell's six grounds for relief are:

(1)    On direct appeal, the Kentucky Supreme Court erred in finding that his will was not overborne during his November 9, 2010 interrogation. D.E. 1 at 6, 17, 22-24.[1]

(2)    On review of his 11.42 motion, the Kentucky Court of Appeals erred in finding that trial counsel was not ineffective at the suppression hearing in regard to *Miranda* issues at his November 9, 2010 interrogation. *Id*. at 8, 17, 25.

(3)    On review of his 11.42 motion, the Kentucky Court of Appeals erred in finding that trial counsel was not ineffective in failing to argue that Campbell's November 2010 confession would have been inadmissible as statements made during plea bargaining under Kentucky Rule of Evidence 410. *Id*. at 9, 17, 25-26.

(4)    On review of his 11.42 motion, the Kentucky Court of Appeals erred in finding that trial counsel was not ineffective concerning Campbell's potential penalty upon his guilty plea. *Id*. at 11, 18, 27-28.

---

[1] Page number references are to the page numbers generated by ECF.

(5)    On review of his 60.02 motion, the Kentucky Court of Appeals erred in finding that his argument about a factual error by the courts (about whether Campbell had filed his own *pro se* sentencing motion) was procedurally barred.  *Id*. at 18-19, 28-20.

(6)    On review of his 60.02 motion, the Kentucky Court of Appeals erred in finding that Campbell's argument about a factual error (described as perjury) concerning the *Miranda* warning card was procedurally barred.  *Id*. at 18-19, 28-20.

## II.  Standard of Review for State Habeas Cases

A state prisoner has a statutory right to collaterally attack his conviction or sentence. *West v. Bell*, 242 F.3d 338, 346 (6th Cir. 2001).  A state prisoner may seek federal habeas corpus relief on the ground that he is being held in custody in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).

The Antiterrorism and Effective Death Penalty Act, Pub L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), requires "heightened respect" for factual findings and legal determinations made by state courts.  *Sinkfield v. Brigano*, 487 F.3d 1013, 1016 (6th Cir. 2007).

Section 2254(d), as amended by AEDPA, provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This is a "highly deferential" standard of review that is "difficult to meet." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). All the state court's factual findings are presumed to be correct and can be rebutted only by "clear and convincing evidence." *Sinkfield*, 487 F.3d at 1016; 28 U.S.C. § 2254(e)(1). Legal conclusions made by state courts also receive substantial deference under AEDPA. "[A] federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam). Also, "circuit precedent does not constitute clearly established Federal law" under AEDPA. *Parker v. Matthews*, 567 U.S. 37, 48 (2012). In sum, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015).

Therefore, the question before this Court is not merely whether the Kentucky courts were incorrect, but whether they were so wrong that their treatment of the law and facts was "unreasonable" under these deferential standards.

### III.  Ground One – Voluntariness of Confession

Campbell argues that his will was overborne during his November 9, 2010 interrogation: "the police detectives continuously made threats of an increased punishment and promises of leniency to coerce the petitioner into giving a statement." D.E. 1 at 23. He argues his "will was overborne as can be viewed in the recording as the petitioner consistently questioned the benefits and repercussions of giving a statement until finally [he] gave in." *Id*. at 23-24.

Due Process prohibits the admission of coerced confessions procured by means "so offensive to a civilized system of justice that they must be condemned." *Ledbetter v. Edwards*,

35 F.3d 1062, 1067 (6th Cir. 1994) (citing *Miller v. Fenton*, 474 U.S. 104, 109 (1985)). A confession is involuntary when: "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in defendant's decision to offer the statement." *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) (citing *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988)).

The Kentucky Supreme Court applied these same factors in Campbell's case. *Campbell I*, No. 2014-SC-140-MR, 2015 WL 5652016, at *2 (Ky. Sept. 24, 2015). The pivot point in this case is whether the coercion was sufficient to overbear Campbell's will. Campbell's motion form and attachment describe the statements he alleges were coercive:

> During interrogation on November 9th, 2010, detectives made numerous threats and promises towards the petitioner's prison sentence and the petitioner's cousin/co-defendant's prison sentence. "Continue to lie, we'll put you in prison because you need to go. It's game over at this point. If you come in here and say I fucked up, I feel bad, the more I think about it, the worse I feel . . . not necessarily sent to prison." Detective Sharp stated the attorneys, prosecutors and judges would sit down with the police prior to trial and would ask questions about the petitioner. Detective asked the petitioner, "If there's something else going on, tell me. I want to know. It's only going to help you." Petitioner stated that he was afraid to talk to the police due to the police not helping the petitioner in a prior case. The detectives stated about the petitioner's concern about spending life in prison that, "your best bargaining chip is to be honest so I can go to the prosecutors and say I sat down with him and he got everything off his chest." The detectives went on to threaten the petitioner saying the petitioner would go to prison for a long time "if you continue to lie." The detectives also stated if the petitioner's story matched up with co-defendant's story then the co-defendant would get leniency but if the petitioner's version of events did not match up with co-defendant's story then no one would receive benefit. Detectives also continued to give half answers to petitioner's specific questions about leniency causing the petitioner's will to be overborne and the waiver of rights to be involuntary.

D.E. 1 at 6, 17.

Here, the Kentucky Supreme Court applied the three factors stated in *Mahan*, above, along with other guidance established in the case law:

It is acceptable for police to use a certain degree of psychological tactics in obtaining a suspect's confession. Various courts, including the United States Supreme Court, have allowed police to play on the suspect's sympathies or explain that honesty might be the best policy for a criminal who hopes for leniency from the state. This Court has, for example, permitted police to engage in strategic deception by misrepresenting the strength of the evidence against the suspect. Promises, whether of leniency or otherwise, bring about somewhat special concerns with regard to a voluntary confession. That said, courts are in agreement that police may validly make some representations to a defendant or may discuss cooperation without rendering the resulting confession involuntary. More specifically, courts have permitted police to initiate conversations on cooperation, . . . promise to make a defendant's cooperation known to the prosecutor, and . . . even be able to make and breach certain promises without rendering a resulting confession involuntary.

*Campbell I*, at *2 (citations and quotation marks omitted).

Having reviewed the record, the Kentucky Supreme Court found:

Campbell's interrogations and related discussions with police were calm affairs with neither Campbell nor police ever becoming agitated. The interrogations were conducted in a casual manner with routine breaks. Campbell was permitted to smoke cigarettes, drink sodas, and contact family members. In fact, at one point, Campbell *thanked* police for being so kind to him.

*Id*. at *3. The Court also found that Campbell was given *Miranda* warnings prior to the

November 9, 2010 interrogation, and Campbell does not challenge that fact in Ground One.[2] *Id*.

During that interrogation,

---

[2] As explained by the Kentucky Supreme Court:

Before reviewing the respective interrogations, it is important to mention that Campbell was given *Miranda* warnings at the beginning of both interrogations and acknowledged he understood those rights. The common *Miranda* recitation warns the defendant that anything he says can and will be used against him. As a result, Campbell entered the interrogation with the knowledge that if he confessed to the robberies, he could be prosecuted. In order for Campbell's confessions to be rendered involuntary, the friendly demeanor and supposed promises by police would have to overcome Campbell's belief that the Commonwealth intended to prosecute him and sentence him to jail, if convicted.

*Campbell I*, at *3. Campbell does raise a challenge concerning the *Miranda* warnings during the November 9, 2010 confession in Ground Two. Even if Campbell raised a *Miranda* issue in Ground One, this Court's review on Ground One is limited to the issues considered by the Kentucky Supreme Court on direct review. *Miranda* was not at issue before that Court. Additionally, that Court's factual findings are presumed correct under 28 U.S.C. § 2254(e)(1) and could only be rebutted by clear and convincing evidence.

> the police continually emphasized that they were not talking with Campbell to determine what happened; rather, they wanted to know why Campbell had robbed Norris.  Consistent with this mission, police requested Campbell unburden himself and try to provide context to the robberies because, on their face, they looked bad.  The police acknowledged that prosecutors often ask questions such as:  "What was he like?"; "Was he remorseful?"; or "Did he seem like he cared?"  Police reminded Campbell they needed him to be honest with them about why the robbery occurred so they could answer those questions.  Throughout the interrogation, police reminded Campbell that his best bargaining chip was his honesty and being completely honest would look better than lying.
>
> Campbell expressed concern for Michael and sought a deal for him because Campbell felt as if Michael's participation was his fault.  Police reminded Campbell that Michael had already provided a statement and his statement aligned neatly with the forensic evidence.  Police then counseled that if his statement differed, he or Michael must be lying and that would mean no deal.  The overall tone of the interrogations was far short of coercion.

*Campbell I*, at *3.  This description of the interrogation is similar to Campbell's version in his petition, but reaches the opposite conclusion on the same facts.  The question before this Court is whether the Kentucky Supreme Court's analysis was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).

As an initial matter, Campbell argues the state courts erred in their legal analysis when they used his "prior experience in the legal system for consideration in the totality of the circumstances when prior experience is not an element of the totality of the circumstances."  D.E. 1 at 24.  Campbell is incorrect.  As the Kentucky Supreme Court in Campbell's direct appeal observed, "Various courts have explicitly acknowledged—some even stressed the importance of—the role a defendant's prior experience plays in assessing whether a confession was voluntary."  *Campbell I*, at *4 n.17.  The federal Supreme Court long ago noted:  "[interrogation tactics that] would be overpowering to the weak of will or mind might be utterly

ineffective against an experienced criminal." *Stein v. New York*, 346 U.S. 156, 185 (1953). The Sixth Circuit has explained:

> Circumstances courts are to consider include the age of the accused, his level of education and intelligence, his physical condition and emotional state at the time of the confession, his expressed fears of violent reprisals, actual physical punishment, the proximity of the coerciveness of the confession as given, and the inherent coerciveness of the confession as given. In deciding whether a defendant's will could have been overborne, courts may also consider whether the defendant had prior experience in the criminal justice system.

*United States v. Ray*, 803 F.3d 244, 266 (6th Cir. 2015) (citations and quotation marks omitted). Campbell's lawyer also recognized the relevance of this factor in his motion to suppress: "The relevant personal characteristics of the defendant include his age, education, intelligence, his physical or emotional condition, and his prior experience with the police." D.E. 14-2 at 28 (quoting *State v. Clappes*, 401 N.W.2d 759, 766 (1987)). In turn, the Kentucky Supreme Court accurately stated the law. It was appropriate for that Court to consider Campbell's experience with the legal system.

Nor did the Kentucky Supreme Court make an unreasonable determination of the facts. Campbell does not point to any factual errors concerning the November 9, 2010 interrogation. He simply asserts that the circumstances should be weighed differently in light of the law. He argues:

> [T]he police detectives continuously made threats of an increased punishment and promises of leniency to coerce the petitioner into giving a statement. . . . The petitioner's will was overborne as can be viewed in the recording as the petitioner consistently questioned the benefits and repercussions of giving a statement until finally the petitioner gave in.

D.E. 1 at 23-24.

It was not unreasonable for the Kentucky Supreme Court to find on these facts that Campbell's will was not overborne under the totality of the circumstances, including his

experience with the legal system.    Indeed, Campbell acknowledges that during the earlier November 2 interview he successfully asserted his *Miranda* rights and that interview ceased. D.E. 1 at 8.  The Court has reviewed the recorded November 9, 2010 interrogation (submitted as a conventional exhibit).[3]   The Court agrees with the Kentucky Supreme Court that the entire interview was a conversational affair.  No high-pressure tactics were used.  Defendant remained in control of himself and did not seem distressed.  The Court finds no factual or legal error on the part of the Kentucky Supreme Court, much less an unreasonable error.  The Kentucky Supreme Court was not unreasonable in its determination that Campbell's confession was voluntary.

### IV.  Law Governing Ineffective Assistance Claims

Grounds Two, Three, and Four allege IAC.    Each of these Grounds was raised in Campbell's first post-conviction motion under Kentucky Rule of Criminal Procedure 11.42.  An ineffective-assistance-of-counsel claim presents a mixed question of law and fact.  *Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003).  To successfully assert an IAC claim, a defendant must prove both deficient performance and prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances."  *Id.* at 688. However, a reviewing court may not second-guess trial counsel's strategic decisions.  *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002).  Thus, "a court must indulge a strong presumption

---

[3] The disk is the one labeled "Commonwealth's Exhibit 2."  The recording is in two parts, with the first half being a WMA file recorded on Det. Sharp's recorder and the second being a MSV file recorded by Det. Bowles.

that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

To prove prejudice under the second prong of *Strickland*, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Id.* at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

To show prejudice in the guilty-plea context, a movant generally "'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial.'" *Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)), *cert. denied sub nom. Hodges v. Carpenter*, 135 S. Ct. 1545 (2015), *reh'g denied*, 135 S. Ct. 2345 (2015).

> Surmounting *Strickland*'s high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas. Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

*Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (citations and quotation marks omitted).

11

The Supreme Court has repeatedly commented on the interaction between AEDPA deference under § 2254(d) and *Strickland*'s standards of review. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Under § 2254, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* Both standards are "'highly deferential' and when the two apply in tandem, review is 'doubly'" deferential. *Id.* at 105 (citations omitted). Under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Also, because the *Strickland* standard is a "general" standard, "the range of reasonable applications is substantial." *Id*.

In this case, the Kentucky Court of Appeals accurately described the *Strickland* standard and accurately allocated the burden to Campbell when it analyzed and denied his IAC claims. *See Campbell II*, No. 2016-CA-1666-MR, 2018 WL 297262, at *2 (Ky. Ct. App. Jan. 5, 2018). Therefore, the Court must grant full double-deference to the state court's decision under § 2254(d).

## V. Analysis of IAC Claims

### A. Ground Two

For Ground Two, Campbell argues "counsel was ineffective for failing to raise during the suppression hearing that the petitioner was not mirandized prior to questioning." D.E. 1 at 25. This pertains to the same November 9, 2010 interrogation that was the subject of Ground One. The Kentucky appellate court addressed this claim as follows:

Campbell argues that his trial counsel was ineffective for failing to argue as grounds for suppression that his *Miranda* rights were violated during his interrogation by the police. This argument is refuted by the record which shows that Campbell's attorney did raise the *Miranda* issue, both in his written suppression motion and verbally before the trial court during the suppression proceedings. The motion to suppress filed by his trial attorney alleged that Campbell's Sixth Amendment rights were violated and that he made statements without the presence of counsel. At the hearing on August 21, 2013, his counsel argued before the trial court that Campbell's *Miranda* rights were not read to him. Specifically, he contended that the recording of the conversation with the police did not show that his rights were read to him, and argued extensively about the inadequacy of any warning and his client's understanding of his rights. At the continuation of the hearing on September 11, 2013, his attorney again argued that Campbell was not properly apprised of his *Miranda* rights. Just because counsel's *Miranda* arguments were unsuccessful does not equate to ineffective assistance of counsel.

*Campbell II*, No. 2016-CA-1666-MR, 2018 WL 297262, at *3 (Ky. Ct. App. Jan. 5, 2018).

The record confirms that counsel *did* argue this *Miranda* issue. For example, Campbell's

counsel argued at the August 2013 evidentiary hearing:

First of all, the first statement . . . the officer testified that his rights were read aloud to him. Of course we've heard the tape. And his rights are not read to him at that point. They just say, other people have done that. Okay. So they say, the tape must not have been running at this point . . . there was never any explanation for why they would not do that preliminary . . . basic information you get. They're going ahead into a conversation. But we can't be assured at what point his rights were actually read to him, what he was advised of. Or if it was just relying on other officers that may have talked to him. What these other people may have said, they may not have gone over all of the rights.

Plus, further, the officer testified that it wasn't like, "Here's your rights and here's your card. Go ahead and sign. Do you understand that?" It was pretty clear that there was never any discussion, "Do you understand your rights and your right to have an attorney and go ahead and contact that attorney?" It was later on apparently, during the course of that I think it was over 50-minute total conversation. But at some point the paper was given because Det. Sharp, "Well we want this." But you know it wasn't like it was everything done right up front. It was sort of like a paper put in front of him to sign after he's already made a statement. So that was the sequence of it.

So I don't think the advising of the rights was properly done and adequately done. He'd never indicated that "Yes I understand everything this paper says and I'm willing to go ahead and talk."

Rec. 26A at 12:01:10-12:03:01.[4]  The Warden's brief contains additional relevant citations to the written record and video record demonstrating that Campbell's lawyer argued Campbell had not been properly Mirandized.  D.E. 14 at 26-30.  And the Court has reviewed these sources. Counsel did not fail to raise the issue that Campbell was not properly *Mirandized* prior to the November 9, 2010 interview.  Counsel argued that issue, but the Kentucky courts accepted Det. Bowles's testimony and found that Campbell was read his *Miranda* at the beginning of the November 9, 2010 interview.  *Campbell I*, No. 2014-SC-140-MR, 2015 WL 5652016, at *3 (Ky. Sept. 24, 2015) ("[I]t is important to mention that Campbell was given *Miranda* warnings at the beginning of both interrogations and acknowledged he understood those rights.").

Campbell's Ground Two is based on a flawed premise refuted by the record.  The appellate court's determination of the facts and its description and application of the law were not unreasonable.

## B.  Ground Three

Ground Three draws on Kentucky Rule of Evidence 410(4).  Under that Rule, "Any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn" is inadmissible in any criminal proceeding.

Campbell argues his confession would have inadmissible had he gone to trial because, when he confessed, he was essentially negotiating a plea with the police detectives.  D.E. 1 at 25-26.  He argues that "the police detectives [were] asserting authority or control over the sentence petitioner would receive if the petitioner gave a statement."  *Id*. at 25.  He cites authority for the proposition that the Rule is not strictly confined to attorneys, but may also apply when a

---

[4] The video record consists of five disks containing various video files.  "Rec. 26A" indicates the audio file "CAMPBELL-26A."  Time indicators refer to the white time stamp embedded in the video.

prosecutor negotiates through an agent. *Id.* at 26. Campbell argues that his trial counsel was ineffective for failing to raise this meritorious argument to seek suppression of his confession. *Id*.

> The scope of Kentucky's Rule 410(4) is defined by Kentucky law:
>
>> to be inadmissible at trial on the basis of KRE 410(4), the statements must have been made in the course of "plea discussions" and those discussions must be "with an attorney for the prosecuting authority." As to the first requirement, a conversation constitutes "plea discussions" when (1) the accused exhibits an actual subjective expectation to negotiate a plea at the time of the discussion and (2) the accused's expectation is reasonable given the totality of the objective circumstances. *United States v. Robertson*, 582 F.2d 1356, 1366 (5th Cir. 1978); [*Roberts v. Commonwealth*, 896 S.W.2d 4, 5-6 (Ky. 1995)]. As to the second requirement, plea discussions "with an attorney for the prosecuting authority" include discussions with the prosecutor as well as discussions with law enforcement officials who are either acting with the express authority of the prosecutor or who state they are acting with such authority. *Roberts*, 896 S.W.2d at 6. *See also Kreps v. Commonwealth*, 286 S.W.3d 213 (Ky. 2009).

*Clutter v. Comm.*, 364 S.W.3d 135, 138 (Ky. 2012).

> Applying *Clutter*, and drawing on the facts as described by the Kentucky Supreme Court on direct review, the Kentucky Court of Appeals found:
>
>> Although Campbell may have believed he was engaged in plea discussions with the prosecuting authority, that expectation was not reasonable under the circumstances. There is absolutely no evidence that the detectives who interviewed him were acting with the express authority of the prosecutor. In describing Campbell's conversations with the police, the Kentucky Supreme Court emphasized that the police never represented that they were acting with the prosecutor's authority: "[The] [p]olice offered to assist Campbell, do everything in their power, or talk to the prosecutor on his behalf; but, for the majority of his discussions with police, Campbell was in control. . . . [The] police stopped short of ever truly promising Campbell anything, outside of simply offering to talk to the prosecutor and present Campbell's side of the situation. There was no guarantee of leniency, and we are unconvinced Campbell believed leniency was forthcoming." *Campbell*, 2015 WL 5652016, at *4-5. Under the factual circumstances of Campbell's conversations with the police, Campbell's trial counsel was not ineffective for not raising a KRE 410(4) violation as it would have had virtually no chance of success. "It is not ineffective assistance of counsel to fail to perform a futile act." *Bowling v. Commonwealth*, 80 S.W.3d 405, 415 (Ky. 2002).

*Campbell II*, No. 2016-CA-1666-MR, 2018 WL 297262, at *3 (Ky. Ct. App. Jan. 5, 2018).

Campbell does not point to any legal or factual error on the part of the Kentucky Court of Appeals in relation to Ground Three.  D.E. 1 at 25-26.  Campbell reasserts his argument that, from his perspective, "the detectives expressed prosecutorial authority over deals."  *Id*. at 9.  However, as noted by the appellate court and confirmed by the recording of the interview, the detectives also made clear that what whatever help they could give Campbell involved talking to the prosecutor.

The Court of Appeals found that any belief of Campbell that he was involved in plea negotiations was not reasonable under the circumstances.  Thus, Rule 410(4) was not implicated, and any argument under that rule would have been futile.  That determination did not involve an unreasonable assessment of the facts or an unreasonable articulation or application of federal law.

## C.  Ground Four

Campbell argues under Ground Four that his sentence after pleading guilty was not what he expected.  According to Campbell, he consistently refused any offer that involved "twenty years for the 1st Degree Robbery and PFO II."  D.E. 1 at 11.  He says he was then offered a deal whereby he would get ten years on the robbery enhanced to twenty years on the PFO II.  However, under the deal as he explains it, the standard (undesirable) 85% parole eligibility would apply only to the initial ten years.  This means the second ten-year period would include a favorable 20% parole eligibility.  *Id*.  He also says the sentence on this conviction was supposed to run concurrently with the earlier-imposed sentence on the companion case.  *Id.* at 11, 18.

Campbell acknowledges the plea agreement he signed "mentioned nothing as to parole eligibility" or whether the sentences would be concurrent.  But he says the written agreement did

not mention anything "to the contrary." D.E. 1 at 18. Campbell says he later realized that these two omitted items were not part of the deal. Instead, the missing terms were included in his lawyer's sentencing motion. *Id*. At sentencing, the trial court denied defense counsel's motion for more favorable parole eligibility and concurrent sentencing.

Campbell argues his lawyer misled him about the terms of the plea, rendering the plea involuntary. Alternatively, he argues, as in his Rule 11.42 motion, that counsel should have moved to withdraw the plea once it became clear that the parole eligibility benefit and concurrent sentencing were not included. D.E. 14-2 at 117-18, 126. "Either trial counsel misled movant and failed to properly inform movant of plea agreement or Judge refused plea agreement and counsel failed to motion for withdrawal of plea." *Id*. at 118.

The Kentucky Court of Appeals found that Campbell's description of the plea deal was "refuted by the record:"

> The written plea offer from the Commonwealth dated November 29, 2012, specifies that the Commonwealth requests the sentences to run consecutively but acknowledges they can run concurrently by law. At the time of the entry of his guilty plea, the trial court referred specifically to the Commonwealth's sentencing "recommendations," and, as Campbell acknowledges, did not specify whether the sentences would be run concurrently or consecutively or whether the 85 percent eligibility rule would apply to the entire twenty-year sentence.

*Campbell II*, No. 2016-CA-1666-MR, 2018 WL 297262, at *4 (Ky. Ct. App. Jan. 5, 2018).

Indeed, the memorialization of the initial agreement does not mention parole eligibility. And it states that, although the Commonwealth would seek consecutive sentencing, the sentences on the two cases could "run concurrently by law." D.E. 14-2 at 7. At sentencing, the Commonwealth presented a modified, more favorable, agreement. Campbell accepted the new agreement during a thorough plea colloquy that included Campbell acknowledging that no additional promises had been made. *See* D.E. 14 at 35-36 (with citations to the written and video

record).  On this record, the appellate court's decision is not unreasonable.  It is particularly difficult to believe Campbell believed his plea involved concurrent sentencing when the written memorialization specifies the Commonwealth would seek consecutive sentencing.

The Kentucky courts also found that Campbell never asked his lawyer to withdraw the plea agreement.  "Campbell's counsel cannot be deemed ineffective for failing to act on his client's behalf to withdraw the plea if his client never informed him that he wished to do so." *Campbell II*, at *4.  Campbell does not appear to challenge this finding.

Campbell argues that the Court of Appeals made an "unreasonable determination of facts" as to what he could be expected to understand.  D.E. 22 at 4.  He argues that because he was a layman he should not have been expected to be aware that the 85% parole eligibility and consecutive sentencing were issues to be argued and not elements of his plea agreement. *Id.* On the contrary, it was not unreasonable for the appellate court to conclude that Campbell understood his actual plea agreement when he agreed to its terms in open court and disclaimed that any further promises were made.

Campbell also argues under Ground Four that he would not have accepted the plea deal had he known that the *credit* for his incarceration prior to sentencing would only apply to the other, earlier case (not the conviction being discussed here).  D.E. 1 at 18.  He says this lack of credit was a result of the sentences being consecutive rather than concurrent. *Id.* In terms of IAC, aside from his assertion that the plea deal included concurrent sentencing, Campbell does not explain how counsel could have obtained a more favorable result on the jail credit. Additionally, the Court of Appeals did not address this jail-credit issue, and it does not appear Campbell raised it in his Rule 11.42. motion.  Because the jail-credit issue was not previously raised and decided, it is unexhausted.  It is not properly before this Court on a habeas petition.

# VI. Procedural Default

Procedural default is a threshold rule; courts generally consider procedural default before addressing the merits of a habeas petition. *Lovins v. Parker*, 712 F.3d 283, 294 (6th Cir. 2013). The procedural default rule is related to the statutory requirement that a habeas petitioner must exhaust any available state-court remedies before bringing a federal petition. *Id.* (citing 28 U.S.C. § 2254(b), (c)). The exhaustion and procedural default rules have the purpose of ensuring that state courts have the opportunity to address federal constitutional claims "in the first instance" before the claims are raised in federal habeas proceedings. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

Procedural default exists when the state court invokes an independent and adequate state procedural rule to dispose of the claim. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). Default exists even when the state court rules on the merits in the alternative. *Hanna v. Ishee*, 694 F.3d 596, 607 (6th Cir. 2012); *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). When the final reasoned state court opinion rules in the alternative and one of the alternatives is a state procedural bar, then the claim is defaulted. *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989).

Here, the Kentucky courts found Grounds Five and Six procedurally barred. These claims were disposed of on the basis of independent and adequate procedural rules.

## A. Ground Five

Ground Five is based on the state courts' statement (in the context of the Rule 11.42 motion) that Campbell had filed his own *pro se* sentencing motion in addition to his attorney's motion. In addressing what is now Ground Four, the Kentucky Court of Appeals stated, "After the entry of the plea and prior to final sentencing, Campbell's attorney filed a motion requesting the sentences to be imposed concurrently and for the 85 percent rule to apply to the ten-year

sentence only. Campbell also filed a *pro se* motion requesting concurrent sentencing." *Campbell II*, No. 2016-CA-1666-MR, 2018 WL 297262, at *4 (Ky. Ct. App. Jan. 5, 2018).

Campbell argued in his subsequent Rule 60.02 motion that this last statement was false; no such *pro se* motion was ever filed with the trial court. The appellate court acknowledged that the record of this case contained no such motion. But the court observed that it lacked the record in Campbell's companion case, wherein a *pro se* sentencing motion might have been filed. *Campbell III*, No. 2018-CA-1884-MR, 2020 WL 507620, at *3 (Ky. Ct. App. Jan. 31, 2020).

"Regardless" of whether or not Campbell had filed a *pro se* motion, however, the court articulated three reasons for denying relief. *Campbell III*, at *3. The first two of these three reasons are procedural bars that prevent review by this Court.

First, the Kentucky Court of Appeals found that Campbell's argument was "not properly preserved" because it had changed between his original 60.02 motion and his appeal—he had shifted from alleging that the trial court made a mistake to alleging that the Court of Appeals made a mistake. *Campbell III*, at *3. The Court cited Kentucky authority for the propositions that (1) the errors alleged on appeal must be the same errors alleged in the original Rule 60.02 motion and (2) "errors to be considered for appellate review must be precisely preserved and identified in the lower court." *Id.* (quoting *Owens v. Commonwealth*, 512 S.W.3d 1, 15 (Ky. App. 2017), and *Elwell v. Stone*, 799 S.W.2d 46, 48 (Ky. App. 1990)). Accordingly, the Court of Appeals invoked an adequate an independent state rule in its first reason for denying relief, thereby creating procedural default.

Second, the court explained,

*if* this Court's prior opinion contained a factual error, it should have been corrected by a petition for rehearing pursuant to CR 76.32(1)(a), which allows for modifications of this Court's opinions to correct errors of fact. As the Commonwealth correctly points out, Campbell failed to file a petition for

rehearing regarding his RCr 11.42 motion. His attempt to correct a possible factual error by this Court in a CR 60.02 motion is improper.

*Campbell III*, at *3.

Third, the court found that "Campbell's second argument is simply a repackaging of his RCr 11.42 motion, in which he contended that his sentences should run concurrently based on the plea agreement. He now presents the same argument under the guise of 'mistake, inadvertence or fraud' by this Court. We are unpersuaded." *Campbell III*, at *3. Although the Court of Appeals does not elaborate further on this third reason, the court appears to be saying that the result of the Rule 11.42 motion would have been the same regardless of whether Campbell had filed a *pro se* sentencing motion in addition to his attorney's motion.

As noted, when the state court rules in the alternative and one of the alternatives is a state procedural bar, then the claim is defaulted. *Harris*, 489 U.S. at 264 n. 10. Here, the Court of Appeals' first and second reasons for denying this claim are plainly procedural bars. The Court held that Campbell had not preserved his argument and could not correct a factual error in his 11.42 case via a Rule 60.02 motion instead of a petition for rehearing. Ground Five is procedurally defaulted. This Court states no opinion regarding the Court of Appeals' third reason for denying relief; that court's first and second reasons invoked an independent and adequate state rule, which forecloses this Court from addressing the merits.

### B. Ground Six

Ground Six is related to Ground Two in that it involves *Miranda* issues related to the hearing on Campbell's motion to suppress. There was testimony at the evidentiary hearing regarding Campbell's signing of a *Miranda* waiver card during the November 9, 2010 interview. The question is *at what point* Campbell signed the card during the interview, and when or whether he was given *Miranda* warnings. D.E. 1 at 19-20, 29; D.E. 14 at 50.

Detective Bowles's initial testimony suggested that Campbell had signed the waiver form *prior to* the interrogation.  However, the recording of the interrogation (which was played during the hearing) revealed that Campbell actually signed it *during* the recorded interrogation.  D.E. 1 at 19-20, 29; D.E. 14 at 50.

Fist, at the evidentiary hearing, Det. Bowles described the November 9, 2010 interview of Campbell in Louisville.  He testified:

> Detective Sharp and I met with Mr. Campbell.  We initially informed Mr. Campbell that we were not in Louisville to discuss the charges for the incidents that Louisville had incarcerated him on.  He acknowledged that.  We then read him his *Miranda* warnings aloud.  Detective Sharp had him sign a piece of paper that had a copy of the *Miranda* warning on it that was read to him.  And then we proceeded to speak with Mr. Campbell after he waived his right to counsel.

Rec. 26 at 09:29:20.[5]

The parties now agree the card was signed during, not before, the interrogation.  D.E. 1 at 19-20, 29; D.E. 14 at 50.  The recording of the November 9, 2010 interview was played at the evidentiary hearing.  On the recording, Det. Sharp say, "I forgot to get you to sign this." Campbell asks, "That you read me my rights?"  Det. Sharp responds, "Yeah, that I read those out to you."  Rec. 26 at 09:59:33.[6]

On cross-examination, Det. Bowles corrected his testimony.

Q:    You testified earlier that his *Miranda* warnings were read aloud to him.

A:    They were.

Q:     But when you listen to the tape, that wasn't on the tape where they had been read aloud to him, correct?

---

[5] Again, the video record consists of five disks containing various video files.  "Rec. 26" indicates the audio file "CAMPBELL-26."  Time indicators refer to the white time stamp embedded in the video.

[6] This exchange happens at minute 11:33 of Det. Bowles's recording on Commonwealth's Exhibit 2, which includes the second half of the interview.

A:      The tape didn't indicate that.  You did not hear that.  I believe Det. Sharp was the one that initiated his recorder.  I'm assuming it was after the fact that he had read the Miranda warnings, since it wasn't on there.

Q:      The tape kind of starts, you said . . . Det. Sharp talking about, you said, people have read your rights before or something.  So we never hear what rights are read to him?

A:      No, sir.

Q:      But you don't know why the tape wasn't activated at that point?

A:      Det. Sharp did not hit record at that time.  I'm not sure why he didn't.

Q:      As far as the rights card, do you know when that was submitted to Mr. Campbell for signature?

A:      During the course of the interview.  On that date.

Q:      It wasn't right after the rights were read; it was some time later?

A:      Det. Sharp had decided during the course of the interview that he wanted to have Mr. Campbell sign that just as a record that it had been read to him.  Mr. Campbell did not protest at any time that he wasn't read his *Miranda* warnings and agreed to sign the piece of paper with the warning card on it.

Q:      So the sequence of events would be to your recollection was that he was read his rights not on tape then somehow the tape starts and we hear some discussion about "you've been read your rights before" so during the course of that conversation, that's when somehow the paper appeared at some point to be signed.  Correct?

A:      At some point during the interview Det. Sharp provided Mr. Campbell . . . he read him his rights.  He acknowledged he understood his rights, agreed to speak with us.  And then Det. Sharp activated his recorder.

Rec. 26 at 10:45:44-10:47:54.  Det. Bowles's full testimony was that Campbell was given *Miranda* warnings, then the recording was started, and then during the interview he was given the waiver paper to sign.

Campbell argues in Ground Six: "The suppression hearing should have been reviewed again without perjury influencing the trial court's judgment.  The detective testified falsely that

the Miranda document was signed prior to the interview when the recording proves the document was signed after statements were made." D.E. 1 at 29.

The Court of Appeals found this issue procedurally barred: "[T]he information forming the basis of Campbell's perjury allegations is not new. It has been known to Campbell since 2013, and should have been included in his direct appeal and/or his RCr 11.42 motion." *Campbell III*, No. 2018-CA-1884-MR, 2020 WL 507620, at *2 (Ky. Ct. App. Jan. 31, 2020).

Under Kentucky law, "errors occurring during the trial should be corrected on *direct* appeal, and the grounds set forth under the various subsections of CR 60.02 deal with *extraordinary* situations which do not as a rule appear during the process of a trial." *Meece v. Comm.*, 529 S.W.3d 281, 285 (Ky. 2017) (quoting *Gross v. Com.*, 648 S.W.2d 853, 856 (Ky. 1983)). Additionally,

> the proper procedure for a defendant aggrieved by a judgment in a criminal case is to directly appeal that judgment, *stating every ground of error which it is reasonable to expect that he or his counsel is aware of when the appeal is taken.*
>
> . . . a defendant is required to avail himself of RCr 11.42 while in custody under sentence or on probation, parole or conditional discharge, *as to any ground of which he is aware, or should be aware, during the period when this remedy is available to him.* Final disposition of that motion, or waiver of the opportunity to make it, shall conclude all issues that reasonably could have been presented in that proceeding. The language of RCr 11.42 forecloses the defendant from raising any questions under CR 60.02 which are issues that could reasonably have been presented by RCr 11.42 proceedings.

*Gross*, 648 S.W.2d at 857.

Under this line of authority, the Court of Appeals found that, because Campbell was aware of this issue at the time of the evidentiary hearing, he should have raised it on direct appeal or a Rule 11.42 motion; Rule 60.02 cannot be used for issues like this one that could have been raised on direct appeal or on a Rule 11.42 motion. Clearly, then, the Court of Appeals invoked an independent and adequate state-law ground for denying relief on Ground Six.

24

Although the Court of Appeals provided additional analysis in the alternative, this Court need not consider that alternative analysis.

### C. Cause and Prejudice for Default

A petitioner may overcome default by showing "cause" and "prejudice" for failing to exhaust the claim. *Williams v. Mitchell*, 792 F.3d 606, 613 (6th Cir. 2015). "[O]nly where a prisoner is impeded or obstructed in complying with the State's established procedures will a federal habeas court excuse the prisoner from the usual sanction of default." *Martinez v. Ryan*, 566 U.S. 1, 13 (2012). The Supreme Court has explained that "cause"

> must be something *external* to the petitioner, something that cannot fairly be attributed to him: "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."

*Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "A factor is external to the defense if it 'cannot fairly be attributed to' the prisoner." *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (quoting *Coleman*, 501 U.S. at 753). "Such factors may include 'interference by officials,' attorney error rising to the level of ineffective assistance of counsel, and 'a showing that the factual or legal basis for a claim was not reasonably available.'" *Cvijetinovic v. Eberlin*, 617 F.3d 833, 837 (6th Cir. 2010) (quoting *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004)).

### 1. Ground Five

Campbell has not established cause and prejudice for Ground Five. He explains:

> The court of appeals also stated that errors of fact should be asserted in a petition for rehearing but the Coram Nobis which was replaced by motions pursuant to civil rule 60 is also used for errors of fact and the petitioner further motioned for discretionary review of the issue when the error was made which is also used to settle mixed questions of fact.

D.E. 1 at 19; *see also* D.E. 22 at 5.

As previously noted, the Kentucky Supreme Court denied Campbell's motion for discretionary review, and that denial is not before this Court.

Campbell argues that Rule 60 "is also used for errors of fact" (including the court's own errors in different proceedings). D.E. 1 at 19. But this Court is not at liberty to interpret Rule 60.02 differently than the Kentucky courts. As previously explained, the law in Kentucky confines Rule 60.02 relief to factual issues discovered after the opportunities for direct appeal and Rule 11.42 relief have passed. Campbell's misunderstanding of the law does not equate to "cause." His misunderstanding is not an "external" factor that cannot be attributed to the defense. *Coleman*, 501 U.S. at 753; *Davila*, 137 S. Ct. at 2065.

## 2. Ground Six

Campbell also has not established cause and prejudice for Ground Six, concerning alleged perjury related to the *Miranda* waiver card. Campbell argues that, while the Court of Appeals found that he had not raised the issue on appeal or Rule 11.42 review, the issue "was petitioner's first argument" in his Rule 11.42 motion. D.E. 1 at 20. In his Rule 11.42 motion, Campbell argued:

> During suppression hearing, Counsel failed to adequately argue suppression. Counsel focused on an overwhelming force defense of police but should have argued Miranda Rights. The interrogation recordings show defendant being questioned but never shows the reading of Miranda rights. *A Miranda card was signed but the recordings show that the card was signed after the majority of the statements have been given*.

D.E. 14-2 at 116 (emphasis added).

As noted, Rule 60.02 is not available to litigate claims that could have been raised in a Rule 11.42 motion. Whether Campbell raised the *Miranda*-card issue in his 11.42 motion or left it out, the result is the same. The record shows Campbell knew or should have known this issue

existed when he moved for Rule 11.42 relief.  The law circumscribing the scope of Rule 60.02 motions applies either way.  Under Kentucky law, Campbell was barred from using Rule 60.02 to litigate—or re-litigate—an issue of which he was previously aware.

### VII. Conclusion

Campbell has not shown that the Kentucky courts were unreasonable in rejecting Grounds One through Four.  And Grounds Five and Six are procedurally defaulted.  The undersigned therefore **RECOMMENDS** that his 28 U.S.C. § 2254 petition be **DENIED**.

The Court further **RECOMMENDS** that no Certificate of Appealability ("COA") should issue.  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard requires a petitioner to demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  In other words, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*

In this case, the well-reasoned opinions of the Kentucky courts on Grounds One to Four are entitled to capacious deference under AEDPA.  Reasonable jurists would not find that these courts rendered "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  And the state courts rejected Grounds Five and Six on procedural grounds.  Campbell has not shown cause and prejudice for those procedural defaults.  Campbell's claims are insufficiently viable to deserve encouragement to proceed further.

The Court further finds that no hearing is warranted.  Review under § 2254 is "limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Evidence introduced in federal court has "no bearing" on § 2254 review.  *Id*. at 185.  Thus, this Court would be barred from considering any additional evidence in addressing Campbell's claims.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute.  *See also* Rules Governing Section 2254 Proceedings, Rule 8(b).  Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 20th day of October, 2021.

**Signed By:**

*Hanly A. Ingram*

**United States Magistrate Judge**