UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

AARON CAMPBELL,                    )
                                   )
Petitioner,                        )
                                   )        No. 5:20-CV-508-REW-HAI
v.                                 )
                                   )        OPINION AND ORDER
DAVID GREEN,                       )
                                   )
Respondent.                        )

*** *** *** ***

On December 21, 2020, Petitioner Aaron Campbell filed a *pro se* petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  *See* DE 1.  On August 26, 2022, after extensive

interim litigation and with a recommendation pending, Campbell moved to withdraw the petition.

*See* DE 26.  For the following reasons, the Court **DENIES** Campbell's motion to withdraw and

**DENIES** the request for a writ.

## I.      Background

Campbell does not challenge much in the facts adopted and summarized in either the

Kentucky Supreme Court's or the Kentucky Court of Appeals's affirmances.[1]  *See* 28 U.S.C. §

---

[1] As Campbell's petition largely challenges only Kentucky's application of federal law to the facts
of this case and does not dispute accuracy or adequacy of the facts considered, an evidentiary
hearing is not warranted under Rule 8 of the *Rules Governing Section 2254 Cases* or § 2254(e)(2).
*See, e.g.*, *Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007) ("In deciding whether to grant an
evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant
to prove the petition's factual allegations, which, if true, would entitle the applicant to federal
habeas relief."); *id.* (noting that "if the record refutes the applicant's factual allegations or
otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing[]").
There are, at most, two factual disputes raised in Campbell's petition.  The first, a mixed question
of law and fact, arises under Campbell's claim for ineffective assistance of counsel as it relates to
his understanding of the terms of his plea agreement.  *See* DE 1 at 27.  Because the record clearly
refutes his claims, as discussed below, the Court denies any request for a hearing as to this claim.

2254(e)(1) (providing that a state court's factual determinations "shall be presumed to be correct" and that a habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence"); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). Thus, like previous courts addressing this issue, the Court presents the facts as described by the Kentucky Supreme Court:

> In August 2009, intruders entered David Norris's home, tied him up, hit him in the head, and robbed him of $70,000. A police investigation failed to produce any suspects for over a year.
>
> Norris was robbed at home again in October 2010. This time, two men entered his home, tied him up, and made off with his credit card. Police began another investigation, aided in this instance by surveillance videos of individuals using credit cards at local stores and by Crimestoppers. Within a short time, Michael Washington emerged as a suspect.
>
> Washington eventually confessed to the crime and implicated Campbell, his cousin, as the other participant. After arresting Campbell, police questioned him about the robbery multiple times. Ultimately, Campbell confessed to being involved. In light of the information gained from Campbell's statement, police became suspicious that Washington and Campbell were involved in the earlier robbery of Norris's home. Forensic evidence verified this suspicion. Campbell eventually confessed to the second robbery, as well.
>
> Campbell was separately indicted for each robbery of Norris's home. Before trial, Campbell filed a motion to suppress both of his confessions on grounds that police made promises of leniency and coerced him into confessing. The trial court denied Campbell's motions following a hearing. As a result, Campbell entered a conditional guilty plea, reserving the right to appeal the trial court's decision. For the 2010 robbery, Campbell pleaded guilty to second-degree robbery and was sentenced to ten years' imprisonment. And for the 2009 robbery, Campbell pleaded guilty to first-degree robbery and being a second-degree Persistent Felony Offender (PFO 2) and, accordingly, was sentenced to twenty years' imprisonment. Campbell's sentences were ordered to run consecutively.

---

The second factual dispute also arises under one of Campbell's ineffective assistance of counsel claims and relates to the Kentucky Court of Appeals's statement, in one opinion, that Campbell filed a *pro se* motion requesting concurrent sentences. *See id.* at 28. As discussed below, the Kentucky Court of Appeals rejected this claim on an independent state ground, thus working a procedural bar to this Court's review. Accordingly, because the Court may not hear the claim, a hearing naturally is not necessary.

*Campbell v. Commonwealth* ("*Campbell I*"), No. 2014-SC-140-MR, 2015 WL 5652016, at *1 (Ky. Sept. 24, 2015).

In 2014, in the Kentucky Supreme Court, Campbell challenged the pretrial denial of the defense motion to suppress his confessions.  *See id.*  The Kentucky Supreme Court affirmed.  *See id.* at *5.  In 2016, pursuant to Kentucky Rule of Criminal Procedure 11.42, Campbell then moved to vacate the judgment, asserting ineffective assistance of counsel ("IAC").[2]  *See Campbell v. Commonwealth* ("*Campbell II*"), No. 2016-CA-001666-MR, 2018 WL 297262, at *2 (Ky. Ct. App. Jan. 5, 2018).  The Kentucky Court of Appeals affirmed the trial court's denial of the motion.  *See id.* at *2, *5.  Then, the Kentucky Supreme Court denied review.  *See* DE 23 at 2.

Subsequently, in 2020, Campbell moved for postconviction relief under Kentucky Rule of Civil Procedure 60.02.  *See Campbell v. Commonwealth* ("*Campbell III*"), No. 2018-CA-001884-MR, 2020 WL 507620 (Ky. Ct. App. Jan. 31, 2020).  In that motion, Campbell argued that a witness at the suppression hearing committed perjury and that the appellate court engaged in "mistake, inadvertence, or fraud."  *Id.* at *2 (internal quotations omitted).  The Kentucky Court of Appeals affirmed the trial court's denial of the motion, and the Kentucky Supreme Court denied review.  *See id.* at 4; DE 23 at 3.

With that background in mind, the Court turns to Campbell's instant petition.  *See* DE 1. In his petition, Campbell asserts six grounds for relief:

(1) The Kentucky Supreme Court erroneously concluded that Campbell's confession during a November 9, 2010 interrogation was voluntary.  *See* DE 1 at 6, 17, 22-24.[3]

---

[2] Judge Ingram correctly notes that "[a] public attorney was appointed to represent Campbell" in this proceeding, but the "lawyer withdrew under KRS § 31.110(2)(c) after determining the proceeding was not one 'that a reasonable person with adequate means would be willing to bring at his or her own expense.'"  DE 23 at 2 (quoting *Campbell II*, 2018 WL 297262, at *2).
[3] The page numbers refer to page numbers generated by the ECF system.

(2) The Kentucky Court of Appeals, in reviewing Campbell's 11.42 motion,[4] improperly found that Campbell's trial counsel was not ineffective at the suppression hearing regarding Campbell's *Miranda* warning. *See id.* at 8, 17, 25.

(3) The Kentucky Court of Appeals, in reviewing Campbell's 11.42 motion, erroneously determined that Campbell's trial counsel was not ineffective by failing to argue that Campbell's November 2010 confession was inadmissible under Kentucky Rule of Evidence 410. *See id.* at 9, 17, 25-26.

(4) The Kentucky Court of Appeals, in reviewing Campbell's 11.42 motion, erred in concluding that Campbell's trial counsel was not ineffective regarding Campbell's potential penalty relative to the guilty plea. *See id.* at 11, 18, 27-28.

(5) The Kentucky Court of Appeals, in reviewing Campbell's 60.02 motion,[5] improperly found that Campbell's argument, that the courts made a factual error regarding whether he had filed his own *pro se* sentencing motion, was procedurally barred. *See id.* at 18-19.

(6) The Kentucky Court of Appeals, in reviewing Campbell's 60.02 motion, erroneously concluded that Campbell's argument that the courts made a factual error regarding whether Detective Bowles committed perjury was procedurally barred. *See id.* at 18-19, 28-30.

---

[4] Under Kentucky Rule of Criminal Procedure 11.42, "[a] prisoner in custody under sentence . . . who claims a right to be released on the ground that the sentence is subject to collateral attack may at any time proceed directly by motion in the court that imposed the sentence to vacate, set aside or correct it." *See* Ky. R. Crim. P. 11.42.
[5] Kentucky Rule of Civil Procedure 60.02 authorizes relief from a final judgment on grounds such as mistake, neglect, or fraud. Ky. R. Civ. P. 60.02.

On June 30, 2021, the Warden responded to these six claims, all in opposition.[6]  *See* DE 14.  On October 20, 2021, after reviewing all six claims, United States Magistrate Judge Hanly A. Ingram recommended that this Court deny Campbell's petition.  *See* DE 23 at 27 (Report and Recommendations).  On November 1, 2021, Campbell  objected to Judge Ingram's Report and Recommendations ("R&R").  *See* DE 25.  Then, on August 29, 2022, Campbell filed a motion to withdraw his petition for writ of habeas corpus.  *See* DE 27.  The Warden responded on September 1, 2022, opposing Campbell's motion to withdraw.  *See* DE 28.  Campbell replied.

## II.     Campbell's Motion to Withdraw

"The Federal Rules of Civil Procedure apply in the habeas context to the extent that they are not inconsistent with the Habeas Corpus Rules."  *Woodford v. Garceau*, 123 S. Ct. 1398, 1399 (2003).  Various district courts have applied Federal Rule of Civil Procedure 41, which governs voluntary dismissals, in the habeas context.  *See, e.g.*, *Bernal v. Barr*, No. cv-20-00164-PHX-MTL, 2020 WL 8673611, at *2 (D. Az. July 24, 2020); *Williams v. Caruso*, No. 07-cv-11291, 2008 WL 544954, at *1 (E.D. Mich. Feb. 25, 2008); *Doster v. Jones*, 60 F.Supp.2d 1258, 1269 (M.D. Ala. 1999).

Under Rule 41, once a party files an answer or a motion for summary judgment, the opposing party may voluntarily dismiss a suit "only by court order."  FED. R. CIV. P. 41(a)(2). Whether to grant a voluntary dismissal is within the court's discretion.  *See Grover ex rel. Grover v. Eli Lily & Co.*, 33 F.3d 716, 718 (6th Cir. 1994).  Unless stated otherwise, a voluntary dismissal is without prejudice.  FED. R. CIV. P. 41(a)(2).  When a case is dismissed without prejudice, it "leaves the situation as if the action has never been filed."  *Sherer v. Construcciones Aeronauticas,*

---

[6] On July 7, 2021, the Warden attached conventional filings from the state court record.  *See* DE 19.

*S.A.*, 987 F.2d 1246, 1247 (6th Cir. 1993).  The Sixth Circuit has stated that "the primary purpose of [Rule 41(a)(2)] in interposing the requirement of court approval is to protect the nonmovant from unfair treatment."  *Grover*, 33 F.3d at 718.  To determine whether unfair treatment exists, the Court considers factors including the progression of the case, the movant's explanation for dismissal, and the nonmovant's effort and expense in preparation for trial or in litigating.  *See id.*

In this instance, Campbell seeks to withdraw his petition, post-recommendation from Judge Ingram.  *See* DE 26.  As grounds, Campbell states, without explanation, that he has "found relief and such relief in this action is no longer required."  *Id.* at 1.  Campbell further indicates that he plans to take "[n]o further actions on the claims presented[.]"  *Id.*  In response, the Warden argues that it is too late for Campbell to withdraw his petition.  *See* DE 28 at 2.  In support, the Warden asserts that Judge Ingram issued an R&R as to Campbell's petition and all that remains is for this Court to review those recommendations, against any objections, and enter a judgment.  *Id.*  Further, the Warden argues he would be prejudiced by withdrawal because he "has appeared and vigorously defended this action, consuming valuable resources."  *Id.*

First, the Court agrees that at this stage, dismissal of Campbell's petition would result in unfair treatment to the Warden.  Campbell filed his petition on December 21, 2020, over two years ago.  *See* DE 1.  Since then, the matter has progressed to the point where Judge Ingram issued a recommended disposition, leaving the issue ripe for review in the Court.  *See* DE 23.  Stated differently, after two years of proceedings, all that remains is for the Court to assess objections and consider entry of a judgment.  And indeed, given the significant progression of this case, the parties and the Court have invested substantial time and resources.  Thus, at this stage, dismissal would result in unfair treatment of the Warden.  Second, the Court finds Campbell's justification for requesting dismissal unpersuasive.  In moving to withdraw, Campbell indicates he "found

6

relief" but does not elaborate or explain to the Court what relief he found since objecting to the R&R on November 1, 2021. Certainly, the judgment and its disabilities remain in effect. In sum, based on the significant progression of this matter and Campbell's bare-bones justification, the Court **DENIES** the motion to withdraw.

### III.    Campbell's Objections to Judge Ingram's R&R

#### a.   Legal Framework

Given denial of Campbell's motion to withdraw, the Court must now review the portions of the R&R to which Campbell properly objects. The Court reviews those parts of the R&R de novo. *See* 28 U.S.C. § 636(b)(1)(C) (requiring "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made"). However, the Court need not conduct "review of a magistrate[] [judge's] factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 106 S. Ct. 466, 472 (1985). The Court tailors its analysis accordingly.

Under § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant an application for a writ of habeas corpus only if the state court's adjudication of the petitioner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d);[7] *accord Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). Notably, the AEDPA established a "'highly deferential standard for evaluating state-court rulings,' which

---

[7] There is some ambiguity concerning the interplay between §§ 2254(d)(2) and 2254(e)(1). Each distinctly assures a measure of deference to state court factual determinations. Although the

demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 123 S. Ct. 357, 360 (2002) (per curiam) (quoting *Lindh v. Murphy*, 117 S. Ct. 2059, 2066 n.7 (1997)). The AEDPA standard is, by design, "difficult to meet." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013)).   The Supreme Court has cautioned courts about the rarity of a warranted writ under § 2254. *See, e.g.*, *Jenkins v. Hutton*, 137 S. Ct. 1769, 1773 (2017) (per curiam).   Typically, the petitioner bears the heavy burden of justifying habeas relief. *See Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009).

Campbell proceeds under § 2254(d)(1), in whole or part, on all claims.   "Under the 'contrary to' clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court

---

Supreme Court declined to guide the interaction in *Wood v. Allen*, 130 S. Ct. 841, 845 (2010), it has stated that:

> Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court-proceeding.

*Miller-El v. Cockrell*, 123 S. Ct. 1029, 1041 (2003); *accord Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007) ("A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." (quoting 28 U.S.C. § 2254(e)(1))); *see also McMullan v. Booker*, 761 F.3d 662, 670 n.3 (6th Cir. 2014); *Shimel v. Warren*, 838 F.3d 685, 697 (6th Cir. 2016); *Rice v. White*, 660 F.3d 242, 254 n.6 (6th Cir. 2011).   The Sixth Circuit has repeatedly acknowledged that "the Supreme Court has yet to clarify the relationship between § 2254(e)(1) . . . and § 2254(d)(2)."   *Carter v. Bogan*, 900 F.3d 754, 768 n.5 (6th Cir. 2018); *see also Allen v. Mitchell*, No. 02-4145, 2020 WL 1429212, at *9 (6th Cir. Mar. 24, 2020) ("The Supreme Court has not yet decided what the relationship is between subsections (d)(2) and (e)(1)."); *Hawkins v. Woods*, 651 F. App'x 305, 309 n.2 (6th Cir. 2016) (observing that "the interplay between § 2254(e)(1) and § 2254(d)(2) remains unresolved[]"); *Rice*, 660 F.3d at 254 n.6 (eschewing the opportunity to clarify "the precise interplay between § 2254(d)(2) and (e)(1)").   The (d)(2) overlay is "demanding but not insatiable." *Harris v. Haeberlin*, 526 F.3d 903, 910 (6th Cir. 2008) (internal quotations omitted) (quoting *Miller-El v. Dretke*, 125 S. Ct. 2317, 2325 (2005)); *see also Feldman v. Thaler*, 695 F.3d 372, 377 (5th Cir. 2012) (describing (e)(1) as a "supplement[ ]" to (d)(2), providing an "'arguably more deferential' standard of review for state court findings of fact" (citation omitted)).

arrives at a conclusion opposite to that reached by this [Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000). In this regard, "clearly established law under the Act encompasses more than just bright-line rules laid down by the Court. It also clearly includes legal principles enunciated in the Court's decisions." *Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002). At the same time, habeas review focuses on the holdings of the Supreme Court, not its *dicta* or holdings of the courts of appeals. *See Williams*, 120 S. Ct. at 1523 (noting the phrase "clearly established federal law" in § 2254(d)(1) "refers to holdings, as opposed to dicta"). Further, federal habeas relief generally is unavailable for state law application errors, unless such error resulted in the denial of a fundamentally fair trial. *See Estelle v. McGuire,* 112 S. Ct. 475, 479-80 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *accord Brooks v. Anderson*, 292 F. App'x 431, 437 (6th Cir. 2008).

As for the "unreasonable application" clause, the Supreme Court has held that "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S. Ct. at 1523. A federal court may not issue writ solely because the state court incorrectly applied the relevant Supreme Court precedent; the state court's misapplication must have been *objectively unreasonable*. *See id.* at 1521-23. In determining whether the state court misapplied Supreme Court precedent, a federal court may look only to the case law "as of the time of the relevant state-court decision." *Id.* at 1523. Critically, the § 2254 inquiry is not a direct review substitute, and "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 1498. Ultimately, federal courts can provide no relief

"so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 786 (quoting *Yarborough v. Alvarado*, 124 S. Ct. 2140, 2149 (2004)); *accord Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) ("[F]ederal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."). Against the required deferential backdrop, the Court proceeds to the merits.

## IV.   Analysis

Campbell asserts that the Kentucky Supreme Court and Court of Appeals erred in applying the law to the facts of his claims, which may be categorized as follows: (1) Ground One asserts that his November 2010 confession should have been suppressed; (2) Grounds Two through Four assert IAC claims; (3) Ground Five asserts a mistake of fact committed by the Kentucky Court of Appeals; and (4) Ground Six asserts an alleged claim of undergirding perjury. *See* DE 1 at 21-30. Judge Ingram concluded that relief was not warranted on any of Campbell's claims, finding that the Kentucky Supreme Court's and Kentucky Court of Appeals's resolutions of these claims were neither contrary to established federal law nor an unreasonable application of such, or (as to Grounds 5 and 6) that Campbell's claims were procedurally barred. *See* DE 23. Campbell objected to Judge Ingram's conclusions on Grounds One, Three, Four, Five, and Six. *See* DE 25. The Court notes that most of the objections simply re-state Campbell's original petition claims and offer little specificity. *See* DE 25. This is largely ineffective to preserve review. Nonetheless, the Court, in its discretion, reviews these claims de novo.

### a.   Ground One: Suppression of Confession

First, Campbell asserts that his statements during a November 2010 interrogation "should have been suppressed due to an involuntary waiver of rights based upon the totality of the circumstances." DE 1 at 6. Specifically, Campbell argues that the detectives interviewing him,

Detective Sharpe and Detective Bowles, "made numerous threats and promises towards the petitioner's prison sentence . . . ." *Id.* In the R&R, Judge Ingram found, through the state-record prism, the detectives did not employ any "high pressure tactics" and that "the entire interview was a conversational affair." DE 23 at 10. In his objection to the R&R, Campbell merely reasserts the position that his will was overborne. *See* DE 25 at 1-2.

Under the Due Process Clause of the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV. Due process is "grievously breached" when police obtain an involuntary confession from a criminal defendant and subsequently use that confession against the defendant. *Blackburn v. State of Ala.*, 80 S. Ct. 274, 279 (1960). Involuntary confessions are defined by three parameters: "(1) the police activity was 'objectively coercive'; (2) the coercion in question was 'sufficient to overbear defendant's will'; and (3) the alleged police misconduct 'was the crucial motivating factor in the defendant's decision to offer the statements.'" *United States v. Fein*, 843 F. App'x 765, 770 (6th Cir. 2021) (citing *United States v. Luck*, 852 F.3d 615, 622 (6th Cir. 2017)).

In determining whether a confession was involuntary, courts look to the totality of the circumstances, including the length of interrogation, the location, the continuity, the defendant's maturity and education, and the defendant's physical condition and mental health. *See Withrow v. Williams*, 113 S. Ct. 1745, 1754 (1993). In the past decades, "courts have found the mental condition of the defendant a more significant factor in the 'voluntariness' calculus." *Connelly*, 107 S. Ct. at 520. However, a defendant's mental condition is not dispositive. *See id.* Police overreaching is also a crucial element. *Id.* If police conduct is not "causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Id.*

11

These same standards guided the Kentucky Supreme Court in denying Campbell's claim that the November 2010 confession should have been suppressed due to involuntariness. *See Campbell I*, 2015 WL 5652016, at *2. That Court, in denying Campbell's claim, highlighted the applicable law:

> It is acceptable for police to use a certain degree of psychological tactics in obtaining a suspect's confession. Various courts, including the United States Supreme Court, have allowed police to play on the suspect's sympathies or explain that honesty might be the best policy for a criminal who hopes for leniency from the state. This Court has, for example, permitted police to engage in strategic deception by misrepresenting the strength of the evidence against the suspect. Promises, whether of leniency or otherwise, bring about somewhat special concerns with regard to a voluntary confession. That said, courts are in agreement that police may validly make some representations to a defendant or may discuss cooperation without rendering the resulting confession involuntary. More specifically, courts have permitted police to initiate conversations on cooperation, . . . promise to make a defendant's cooperation known to the prosecutor, and . . . even be able to make and breach certain promises without rendering a resulting confession involuntary.

*Id.*

With these standards in mind, in addressing the November 2010 interrogation specifically challenged in Campbell's petition, the Kentucky Supreme Court said:

> Police first met with Campbell in November 2010 following his arrest. The focus of this interrogation was the 2010 robbery. During this interrogation, the police continually emphasized that they were not talking with Campbell to determine what happened; rather, they wanted to know why Campbell had robbed Norris. Consistent with this mission, police requested Campbell unburden himself and try to provide context to the robberies because, on their face, they looked bad. The police acknowledged that prosecutors often ask questions such as: "What was he like?"; "Was he remorseful?"; "Was he honest?"; or "Did he seem like he cared?" Police reminded Campbell they needed him to be honest with them about why the robbery occurred so they could answer those questions. Throughout the interrogation, police reminded Campbell that his best bargaining chip was his honesty and being completely honest would look better than lying. Campbell expressed concern for Michael and sought a deal for him because Campbell felt as if Michael's participation was his fault. Police reminded Campbell that Michael had already provided a statement and his statement aligned neatly with the forensic evidence. Police then counseled that if his statement differed, he or Michael must be lying and that would mean no deal. The overall tone of the interrogations was far short of coercion.

*Campbell I*, 2015 WL 5652016, at *3.

This Court agrees with the Kentucky Supreme Court's reasonable characterization of the conversation. While the Constitution prohibits unjust police overreaching,[8] police may use various tactics to elicit information from a suspect. Indeed, the Sixth Circuit has found that promises of leniency are coercive only "if they are broken or illusory." *United States v. Johnson*, 351 F.3d 254, 261-62 (6th Cir. 2003). In general, "promises to recommend leniency and speculation that cooperation will have a positive effect do not make subsequent statements involuntary." *United States v. Delaney*, 443 F. App'x 122, 129 (6th Cir. 2011). In contrast, an *illusory* promise can render a confession involuntary because it "is a statement in the form of a promise, but lacking its substance in that it does not actually commit the police to undertake or refrain from any particular course of action." *Johnson*, at 262, n.1.

In Campbell's case, most of the detectives' allegedly coercive statements were promises to recommend leniency in exchange for honesty. *See United States v. Binford*, 818 F.3d 261, 272 (6th Cir. 2016) (finding detective's statement that "if you help me, I help you" not illusory where detective had authority to make such promise). Those promises—if promises at all—were not illusory. During the interrogation, one detective stated that, if Campbell cooperates, "he will do whatever is in his power to do . . . I don't know what that is." 10-CR-1585, Commonwealth's Exhibit 2, Suppression Hrg. on 8/21/13, at 09:32 ("Exhibit 2").[9] While there is no direct evidence

---

[8] *See, e.g.*, *Mincey v. Arizona*, 98 S. Ct. 2408 (1978) (finding defendant's confession involuntary because officers subjected defendant to a four-hour interrogation while incapacitated and sedated in intensive-care unit); *Greenwald v. Wisconsin*, 88 S. Ct. 1152 (1968) (concluding defendant's confession was involuntary because officers interrogated defendant for over eighteen hours, without food or sleep); *Beecher v. Alabama*, 88 S. Ct. 189 (1967) (holding defendant's confession was involuntary because officers ordered defendant "to speak his guilt or be killed").

[9] The timestamp refers to the timestamp generated by the Court's audio player. The audio file itself contained no independent timestamps.

available that either detective spoke to the prosecutor, or anyone else, on Campbell's behalf, Campbell received and accepted a plea offer that dismissed one count in case number 10-CR-1585 and reduced robbery first to robbery second in case number 11-CR-639.  It is not unreasonable to conclude that these concessions were supported, at least in part, by discussions between the state prosecutor and the detectives.   The Kentucky Supreme Court found the "overall tone of the interrogations . . . far short of coercion." *Campbell I*, 2015 WL 5652016, at *3.

As to statements concerning prison, one detective stated, "If you come in here . . . and you're like hey, I really fucked up, you know I feel bad for this guy . . . the more I think about it, the worse I feel . . . to me that person is somebody that we can kind of help along, maybe rehabilitate . . . not somebody that we need to, you know, end their life with prison over this." Exhibit 2, at 03:38-03:51.  When Campbell presses as to what exactly the detectives may be able to do for him, they state that "it depends on you." *Id.* at 04:00-04:10.  The detectives made no specific promises as to the length of Campbell's sentence; they did not represent that he would not be charged or that they had control over what his ultimate sentence may be.  *See, e.g.*, *United States v. Redditt*, 87 F. App'x 440, 444 (6th Cir. 2003) (finding confession voluntary and not coerced where defendant was told that "unless he confessed he would be looking at forty years of federal time on a carjacking charge"); *cf. United States v. Siler*, 526 F. App'x 573, 576 (6th Cir. 2013) (finding that "the promises went too far" where investigator said no one would be charged if defendant provided information and that the investigator influenced which cases the prosecutor pursued).

Turning to a totality of the circumstances analysis, the conversation between Campbell and the detectives was as friendly and cordial as one could expect of an interrogation into illegal activity.  The interrogation lasted less than thirty minutes and nothing indicates that Campbell was

14

deprived of any necessities, even during that short timeframe.[10]  The Sixth Circuit has found such factors counsel against a finding of involuntariness.  *See Wesson v. Shoop*, 17 F.4th 700, 704 (6th Cir. 2021) (finding petitioner did not demonstrate his confession violated *Miranda*, in part because he did not claim officers "denied him access to medical attention, food, a bathroom, or anything else he needed").  Further, Campbell has not raised any issue related to mental health or physical condition that could suggest his confession was involuntary.  In fact, the Court notes that Campbell's *pro se* briefs display intellectual ability and evidence a person fully capable of logical reasoning and rational deduction.  Additionally, Campbell's prior experiences support that his confession was knowing and voluntary.  Campbell surely understood the implications of speaking to the police as he acknowledges that in a November 2, 2010 interview—one week before his purportedly coerced confession—he invoked his *Miranda* rights, requested an attorney, and halted the interview.  *See* DE 1 at 8.  In sum, the Kentucky Supreme Court's fair-minded findings and conclusions do not amount to an unreasonable application of federal law or an unreasonable determination of the facts.  Judge Ingram properly analyzed the matters, and the Court rejects Campbell's objection.

---

[10] The Kentucky Supreme Court, referring to a later interview between Campbell and Detective Bowles, noted that Campbell was able to "smoke cigarettes, drink sodas, and contact family members[.]".  *Campbell I*, 2015 WL 5652016 at *3.  However, Campbell does not challenge this interview; he only challenges the earlier November 9, 2010 interview with Detective Sharpe and Detective Bowles.  *See* DE 1 at 6, 23.

### b. Grounds Three and Four: IAC Claims[11]

#### i. Standard of Review

Next, the Court turns to Grounds Three and Four, which assert IAC claims.[12]  IAC claims present a mixed question of fact and law, so the Court proceeds under § 2554(d)(1).  *See Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003).  IAC claims are governed by a two-prong test: (1) whether counsel's performance fell below an "objective standard of reasonableness"; and (2) whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *See Strickland v. Washington*, 104 S. Ct. 2052, 2055 (1984).

Petitioners bear a heavy burden on IAC claims.  As to the first prong, Campbell must overcome the presumption "that counsel's representation was within the 'wide range' of reasonable professional assistance[.]"  *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 104 S. Ct. at 2052).  The "objective standard of reasonableness" is measured against "prevailing professional norms" and considers "all the circumstances."  *Strickland*, 104 S. Ct. at 2066.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.*  "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one" because "the attorney observed the relevant proceedings, knew of materials outside the record" and interacted with all parties to the case.  *Harrington*, 131 S. Ct. at 788.

---

[11] Campbell does not object to Judge Ingram's conclusions as to Ground Two.  *See* DE 25. Plainly, his lawyer did raise the *Miranda* issue, foreclosing that theory.

[12] Each of these Grounds were raised in Campbell's first post-conviction motion under Rule 11.42.  *See Campbell II*, 2018 WL 297262.

As to the second prong, Campbell must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 2066-67. As Judge Ingram noted, "[c]ourts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry." DE 23, at 11 (citing *Strickland*, 104 S. Ct. at 2069-70). In the context of a guilty plea, the petitioner must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 106 S. Ct. 366, 370 (1985).

In the § 2254 context, the deference afforded by the AEDPA is even greater. *See Harrington*, 131 S. Ct. at 788 (stating that when applying both *Strickland* and § 2254, the standard of review is "doubly" deferential). The primary consideration is not whether counsel's performance met the *Strickland* standard, but rather whether the state court's application of *Strickland* review was unreasonable. *See id.* at 787. Simply put, the Court must determine if there "is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 788.

> *ii.  Ground Three: Failure to Raise Kentucky Rule of Evidence 410 Violation*

Regarding IAC, Campbell first asserts that Herbert West, his attorney, failed to raise any argument that Campbell's statements to detectives on November 9, 2010 were inadmissible as evidence against him under Kentucky Rule of Evidence 410, because they qualified as plea discussions. *See* DE 1, at 9, 17. Under Rule 410, "any statement[s] made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn" are not "admissible against the defendant who

made the plea or was a participant in the plea discussions[.]"  KRE 410(4).  The Kentucky Court

of Appeals rejected Campbell's argument under this Rule and articulated the applicable standard:

> To be inadmissible at trial on the basis of KRE 410(4), the statements must have
> been made in the course of 'plea discussions' and those discussions must be 'with
> an attorney for the prosecuting authority.'  As to the first requirement, a
> conversation constitutes 'plea discussions' when (1) the accused exhibits an actual
> subjective expectation to negotiate a plea at the time of the discussion and (2) the
> accused's expectation is reasonable given the totality of the objective
> circumstances.  As to the second requirement, plea discussions 'with an attorney for
> the prosecuting authority' include discussions with the prosecutor as well as
> discussions with law enforcement officials who are either acting with the express
> authority of the prosecutor or who state they are acting with such authority.

*Campbell II*, 2018 WL 297262, at *3 (citing *Clutter v. Commonwealth*, 364 S.W.3d 135, 138 (Ky.

2012)).  Applying this standard, the Kentucky Court of Appeals found that "[t]here is absolutely

no evidence that the detectives who interviewed him were acting with the express authority of the

prosecutor."  *Id.*  There is no credible proof that the officials claimed such authority.

The Court finds the appellate court's conclusion reasonable based on the evidence.  In his

petition, Campbell raises two specific statements where the detectives allegedly expressed

prosecutorial authority.  Campbell takes issue with the statement, "You could go to prison for a

long time, or you could try to work something out."  *See* DE 1 at 10.  Looking at this statement

within the context of the recorded interrogation makes clear that the detectives did not express any

prosecutorial authority:

> **Sharpe:** "You could go to prison for a long time, or you could try to work
> something out. And if you continue to lie, then we're going to help put you in prison
> for a long time. Because then it shows that you need to go, it's not like you feel bad
> about it, you know what I mean. Like if we came in here, it's game over at this
> point by the way, like if we came in here and were like 'hey you know, what
> happened [intelligible]? 'I don't know what the fuck you're talking about' That
> person needs to go to jail, and that person needs to go to prison . . . .
> **Campbell:** "What am I, you know, how are you guys even gonna help me with
> that?"
> **Sharpe:** "Well it depends on you."
> **Campbell:** "I mean so it's just, I'm in the blind, you know."

18

> **Bowles:** What ends up happening, when things go to court, you know, the attorneys, and the prosecutors, and the judges, they sit down with us beforehand. They sit down with us, they call us, they send emails, we sit down, we have meetings, and they say look you know, Matt, Reed, you sat down with Aaron, drove up to Louisville, you met him face to face, you know, what was he like? Was he honest? Did he seem remorseful? Did he seem like he cared and he realized he made a mistake, and he was just like 'look, I did this, I did that, I need to put it behind me. You know, I'm a grown man, yeah I made a mistake.'

Exhibit 2, at 02:38.  In that interaction, in response to Campbell's question about *how* the detectives could help him, Detective Bowles explicitly states that it involves speaking with prosecutors.  The detectives did not profess to carry prosecutorial authority.

Further, Campbell points to Detective Sharpe's statements regarding Campbell's co-defendant and cousin, Michael Washington.  *See* DE 1 at 9.  Specifically:

> **Sharpe:** There's evidence at the scene, and there's what Michael said, okay. What Michael says, is after the evidence. Michael's [story] and the evidence match up. So if yours doesn't match up with Michael, then he's lying. And he'll get no deal.
> **Campbell:** Michael?
> **Sharpe:** Yeah. If what you say, doesn't match up with what he says, then one of you is lying and it's going to fuck both your deals.

Exhibit 2, at 19:26.

Campbell objects to Judge Ingram's findings as to this portion of the conversation, stating that "when the detectives assert that a person will receive a certain amount of prison time unless they cooperate[,]" they are expressing a power held only by a prosecuting authority.  DE 25 at 2.  Setting aside the fact that the detectives never made such a promise during this interrogation, Campbell's subjective beliefs about the conversation are only one part of the analysis.  And indeed, Kentucky case law and the evidence do not support Campbell's claim.  Detective Sharpe's statements are a far cry from situations where Kentucky courts have found violations or applicability of Rule 410.  *See, e.g.*, *Roberts v. Commonwealth*, 896 S.W.2d 4, 5-6 (Ky. 1995) (finding that Rule 410 precluded defendant's confession where the Commonwealth's counsel

personally called during interrogation to make promises to defendant); *Kreps v. Commonwealth*, 286 S.W.3d 213, 218 (Ky. 2009) (concluding that Rule 410 precluded use of confession where interrogating detective called the Commonwealth's attorney during interrogation and relayed promises in exchange for a confession).  While the officer cautioned Campbell about the likely consequences of an inconsistent story, it would be unreasonable for Campbell to conclude this meant the detective had control over the ultimate deal.

Given that none of the detectives' statements implicate Rule 410, any argument under that Rule would have been futile.  Failure to raise a futile claim does not constitute ineffective assistance of counsel.  *See Bowling v. Commonwealth*, 80 S.W.3d 405, 415 ("It is not ineffective assistance of counsel to fail to perform a futile act.")  Thus, in this instance, it was not unreasonable for the appellate court to reject Campbell's argument that West was ineffective by failing to argue a Rule 410 violation.  The Kentucky court acted reasonably, and Judge Ingram's analysis was apt.

### iii.   Ground Four: IAC Related to Terms of Plea Agreement

Campbell next argues that his plea was involuntary because West "misled [him] as to the terms of the sentence pursuant to the plea agreement."  DE 1 at 27.  Campbell states that West "informed [him] of a conditional plea agreement of ten (10) years at 85% parole eligibility for 1st Degree Robbery enhanced to twenty (20) years by the [Persistent Felony Offender II, and that] the 85% parole eligibility would only apply to the initial ten (10) years and not the enhance time[.]" DE 1 at 11.  Campbell further alleges that the first-degree robbery charge was to run concurrent to his prior Jefferson County case.  *Id.*  The sentencing court, contrary to Campbell's belief, imposed a twenty-year sentence on Count 1 of first-degree robbery in case 10-CR-1585 and a ten-year sentence for second-degree robbery in case 11-CR-639, each to run consecutively internally and with Campbell's Jefferson County cases.  *See* DE 14-2, at 50.

20

The Kentucky Court of Appeals found Campbell's arguments refuted by the record. *See Campbell II*, 2018 WL 297262, at *4. The appellate court pointed to the written terms of the plea offer from the Commonwealth, which "specifie[d] that the Commonwealth requests the sentences to run consecutively but acknowledges they can run concurrently by law." *Id.* Additionally, the court noted that Campbell's attorney filed a motion requesting concurrent sentences, an action he would not have taken if a concurrent sentence was already part of or perceived to be part of the agreement. *Id.* These factual determinations by the state court are presumed correct under 28 U.S.C. § 2254(e)(1). Nothing impugns their logic or foundation. Further, the sworn plea colloquy cuts against any contrary expectations on the part of the well-travelled Campbell. The specific terms of the plea agreement are contained in a pre-trial conference form dated November 29, 2012, filed by the Warden. *See* DE 14-2 at 7. This form indicates, in handwritten bullet points, that "the Commonwealth will recommend 11 CR 639, Ct 1: 10 yrs. 10 CR 1585, Ct 1: 10 yrs, enhanced to 20 yrs by Ct. 3, dismiss Ct. 2." *See id.* Handwritten at the bottom of the page is an additional term: "Comm. requests run consecutive but can run concurrently by law." *Id.* This form is signed by the Attorney for the Commonwealth and West. *Id.* Clearly, the plea left open for advocacy the issues Campbell now complains over.

The Court has also reviewed the sentencing memorandum filed by West in advance of Campbell's sentencing hearing. *See* DE 14-2 at 42. The terms that Campbell states West expressed to him, both concerning parole eligibility and concurrent sentences, are fully contained, as points in contention, in the memorandum. *Id.* It is not reasonable to think that these terms were part of the plea agreement itself. If they had been, there would be no need for West to file this motion asking the Court to impose such terms. Instead, West would have filed a motion expressing that these were the agreed terms. Indeed, the Commonwealth filed a response to the memorandum

opposing both requests.  *Id.* at 44.  In all likelihood, West expressed to Campbell his hope that the court may, in its discretion, impose concurrent sentences and a favorable parole eligibility scheme. There is no evidence, however, that West ever promised or guaranteed Campbell this would be the outcome, and Campbell does not allege that West did so.  Campbell alleges that he understood that these would be the terms of his sentence, but does not offer any explanation as to why he held that understanding.

The Court further reviewed a hearing in Fayette Circuit Court on September 13, 2013, where the trial judge accepted Campbell's guilty plea.  *See* 10-CR-1585, Certified Portions CD, Segment 20.  The following exchange between the trial judge, the Commonwealth's attorney, West, and Campbell provides further support to this Court's (indeed, the state court's) conclusion:

> **Judge:** Have you had all the time you need to talk to your attorney about these pleas?
> **Campbell:** Yes, your honor.
> **Judge:** Are you satisfied with his representation of you on these charges?
> **Campbell:** Yes, your honor.
> **Judge:** Any complaints in that regard?
> **Campbell:** No, your honor.
> **Judge:** Recommendation as to 10-CR-1585?
> **Comm. Attorney:** As to Count 1, the Commonwealth would recommend 10 years enhanced to 20 years by Count 4 of the indictment and dismissal of Count 2. There will be restitution for the medical costs and the money that was taken from the ATM, which I think was $500, your honor. And this must run consecutive to the sentence for which he was on probation, 09-CR-1833.
>       . . .
> **Judge:** And on 11-CR-639?
> **Comm. Attorney:** Commonwealth would move to amend to Robbery 2nd with a recommendation of ten years, and the restitution in that case your honor is $70,000 plus the medical expenses . . .
> **Judge:** Okay, was that your understanding of the recommendation in both cases? Was there also another case involved?
> **Comm. Attorney:** No.
> **Campbell:** Yes, your honor.
> **Judge:** That was your understanding in both cases?
> **West:** Right, we've discussed that . . .

**Judge:** Have you read, or your attorney read to you the waivers of further proceedings with petitioner entering a plea of guilty? You understand those documents and make a decision to sign them?

**Campbell:** Yes, your honor.

[Video shows Campbell signing the waivers in open court.]

. . .

**Judge:** [A]re you telling me that you are in fact guilty under indictment 10-CR-1585 to one count of robbery first, based on a recommendation of 10 years enhanced to 20 years by the PFO Second?

**Campbell:** Yes, your honor.

**Judge:** And you're acknowledging that prior to the commission of the offense for which you're pleading guilty here today, you were charged and convicted of at least one prior felony conviction in the Commonwealth of Kentucky?

**Campbell:** Yes, your honor.

**Judge:** And with respect to 11-CR-639, one count of robbery first, as amended to robbery second, ten years?

**Campbell:** Yes, your honor.

. . .

**Judge:** Have any threats been made to you, any promises, pressures, or assurances been made to you to get you to enter this plea?

**Campbell:** No, your honor.

**Judge:** And did you in fact commit the offense to which you're pleading guilty here today?

**Campbell:** Yes, your honor.

**Judge:** And are you pleading guilty of your own free will?

**Campbell:** Yes, your honor.

. . .

**Judge:** Is his plea consistent with your advice?

**West:** Yes.

**Judge:** And do you believe his plea is made freely, knowingly, and voluntarily?

**West:** Yes, your Honor.

**Judge:** Mr. Campbell, do you agree?

**Campbell:** Yes, your honor.

10-CR-1585, Certified Portions CD, Segment 20, at 11:47:25 – 11:54:20.

This hearing provides near definitive evidence that Campbell was under no illusions about the potential sentence he faced or the terms of his plea agreement. Campbell indicated his understanding of the Commonwealth's recommendations. It would be entirely unreasonable for Campbell to believe that the terms of his plea agreement with the Commonwealth were different from what the Commonwealth clearly requested on the record. Indeed, when asked if any

assurances or promises were made to induce him to enter a guilty plea, Campbell indicated no such promises.  Campbell cannot plausibly claim his plea deal included terms either contrary to the colloquy or omitted from the colloquy.  There simply is no credible indication that Campbell's counsel misled him or failed to perform adequately in context.

As Judge Ingram correctly concluded, "it was not unreasonable for the appellate court to conclude that Campbell understood his actual plea agreement when he agreed to its terms in open court and disclaimed that any further promises were made." DE 23 at 18.  This ground is without merit.  Kentucky properly viewed the sentence as squaring with the plea deal, a deal Campbell ratified in open court.

### c.  Grounds Five and Six: Procedural Default

Campbell's final two claims involve application of procedural default rules. "A petitioner procedurally defaults claims for habeas relief if the petitioner has not presented those claims to the state courts in accordance with the state's procedural rules." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That default "carries over to federal courts and precludes habeas review of that claim in federal court. In order for the doctrine to apply, however, the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Id.*  The Court thus proceeds under a two-step analysis: (1) whether Campbell failed to comply with a Kentucky procedural rule; and (2) whether the Kentucky state court based its decision(s) on the state procedural rule.

#### i.  Ground Five: "Error of fact" Regarding a Pro Se Motion for Concurrent Sentences

Regarding Ground Five, Campbell asserts that the Kentucky Court of Appeals's finding that Campbell's plea was voluntary should be reversed because the court made an error or mistake of fact.  *See* DE 1 at 28.  Specifically, Campbell challenges the state court's assertion that he filed

a *pro se* motion, along with his attorney's motion, for concurrent sentences, and that Campbell "would not have felt the need to file such motion[] if [he] believed that a concurrent sentencing arrangement was binding on the trial court." *Campbell II*, 2018 WL 297262, at *4. Following the Kentucky Court of Appeals's decision, Campbell filed a Rule 60.02 motion alleging that because he, in fact, never filed a *pro se* motion, the judgment was issued pursuant to "mistake, inadvertence, or fraud[.]" *See* DE 14-2 at 261. Campbell further asserted that the court's mistake "harmed [him] by having the specific argument ruled against in [Campbell's] RCr 11.42 motion." *Id.* at 262. Campbell then requests that the "judgment [] be vacated to have a chance for an actual agreed upon plea agreement or a ruling on the merit[s] of the RCr 11.42 issue without the inadvertence that a motion was filed pro se by the Movant for concurrent sentences." *Id.* Campbell later moved to supplement this Rule 60.02 motion, conceding that his lawyer filed a motion for concurrent sentencing but retaining his denial of any such *pro se* motion. *See id.* at 268. In denying Campbell's Rule 60.02 motion, the Fayette Circuit Court detailed the relevant law:

> Kentucky Rules of Civil Procedure (CR) Rule 60.02 in relevant part states, "On motion a court may, upon such terms as are just, relieve a party . . . from its final judgment . . . upon the following grounds: (a) mistake, inadvertence, surprise or excusable neglect; . . . (c) perjury or falsified evidence; (d) fraud affecting the proceedings, other than perjury or falsified evidence; . . . or (f) any other reason of an extraordinary nature justifying relief." "CR 60.02 relief is discretionary." *Gross v. Commonwealth*, 648 S.W.2d 853, 857 (Ky. 1983). "CR 60.02 is an extraordinary remedy and is available only when a substantial miscarriage of justice will result from the effect of the final judgment." *Wilson v. Commonwealth*, 403 S.W.2d 710, 712 (Ky. 1966). "CR 60.02 allows appeals based upon claims of error 'that were unknown and could not have been known to the moving party by exercise of reasonable diligence and in time to have been otherwise presented to the court.'" *Sanders v. Commonwealth*, 339 S.W.3d 427, 437 (Ky. 2011) (quoting Young v. Edward Technology Group, Inc., 918 S.W.2d 229, 231 (Ky. App. 1995)). "CR 60.02 is not a supplemental appeal procedure." *Wimsatt v. Haydon Oil Co.*, 414 S.W.2d 908, 910 (Ky. 1967). "[It] is not intended as merely an additional opportunity to raise claims which could and should have been raised in prior proceedings[.]" *Sanders v. Commonwealth*, 339 S.W.3d 427, 437 (Ky. 2011).

*Id.* at 283-84. The Fayette Court did not squarely address this claim but stated that West "did request that the sentences be run [concurrently]. It was denied." *Id.* at 286. When Campbell appealed the denial of his Rule 60.02 motion to the Kentucky Court of Appeals, that court recognized its earlier error in stating that Campbell filed a *pro se* motion. *See Campbell III*, 2020 WL 507620, at *3 ("We agree with Campbell that the record before us is devoid of a . . . *pro se* motion filed by Campbell."). The court nonetheless rejected Campbell's motion for three reasons: (1) Campbell did not properly preserve the claim of error; (2) if the court's prior opinion contained a factual error, the proper action was to file a "petition for rehearing pursuant to CR 76.32(1)(a)," not a Rule 60.02 motion; and (3) the "argument is simply a repackaging of [Campbell's] RCr 11.42 motion, in which he contended that his sentences should run concurrently based on the plea agreement." *Id.*

As Judge Ingram indicated, the Kentucky Court of Appeals ruled in the alternative, indicating two grounds for denial that "are plainly procedural bars." DE 23 at 21. Campbell objects to this conclusion, specifically to the notion that his claim was not properly preserved. *See* DE 25 at 3-4. The Court need not delve into that sub-issue. Regardless of whether Campbell properly preserved his claim, the Court of Appeals articulated a second ground for denial that also operates as a procedural bar: Campbell should have challenged the error in his Rule 11.42 motion pursuant to a rehearing request, under Rule 76.32 (and the corrective route of 76.32(1)(a)), rather than under Rule 60.02. *See Campbell III*, 2020 WL 507620, at *3. Indeed, Campbell's request to the Kentucky Court of Appeals appears to seek a rehearing on the 11.42 motion, although in an improper form. DE 14-2 at 262. Thus, this procedural bar forecloses the Court from addressing the merits of the claim. Judge Ingram properly applied the bar, found a lack of cause and prejudice (here unchallenged), and foreclosed the relief basis. Campbell's objection is unavailing.

*ii. Ground Six: Alleged Perjury by Officer at Suppression Hearing*

Campbell's sixth and final ground for relief raises an issue again related to the suppression hearing on August 21, 2013.  At the hearing, Detective Bowles indicated that Campbell signed a *Miranda* waiver form prior to the November 9, 2010 interrogation.  *See* Exhibit B at 09:29:20.  Judge Ingram noted that "[t]he parties now agree the card was signed during, not before, the interrogation."  DE 23 at 22 (citing DE 1 at 19-20, 29; DE 14 at 50).  "[Detective] Bowles's full testimony was that Campbell was given Miranda warnings, then the recording was started, and then during the interview he was given the waiver paper to sign."  *Id.* at 23.  Campbell asserts that Detective Bowles's slight sequential misstatements constituted perjury and false testimony.  *See* DE 1 at 29.  Campbell specifically argues that "[t]he suppression hearing should have been reviewed again without perjury influencing the trial court's judgment. The detective testified falsely that the Miranda document was signed prior to the interview when the recording proves the document was signed after statements were made."  *Id.*

On appeal, the Kentucky Court of Appeals first explained that although a plain reading of CR 60.02 indicates that perjured testimony may be a basis for justifying relief, the Kentucky Supreme Court has somewhat cabined the role of Rule 60.02:

> [T]he proper procedure for a defendant aggrieved by a judgment in a criminal case is to directly appeal that judgment, stating every ground of error which it is reasonable to expect that he or his counsel is aware of when the appeal is taken. Next, we hold that a defendant is required to avail himself of RCr [ 4 ] 11.42 while in custody under sentence or on probation, parole or conditional discharge, as to any ground of which he is aware, or should be aware, during the period when this remedy is available to him. Final disposition of that motion, or waiver of the opportunity to make it, shall conclude all issues that reasonably could have been presented in that proceeding. The language of RCr 11.42 forecloses the defendant from raising any questions under CR 60.02 which are "issues that could reasonably have been presented" by RCr 11.42 proceedings.

*Campbell III*, 2020 WL 507620, at *2 (citing *Gross*, 648 S.W.2d at 857).  Finding that the facts that form the basis of Campbell's supposed perjury claim were not new, the state court held that Campbell should have asserted this claim in the direct appeal or prior Rule 11.42 motion.  *Id.* Campbell's failure to comply with the procedural rules acted as an independent and adequate state ground for the denial.

In his objection to Judge Ingram's ruling, Campbell asserted that the claim was not a proper Rule 11.42 claim because it was "preserved by counsel."  DE 25 at 4.  However, Campbell does not offer authority supporting this statement, and the Court is unaware of any.  The claim of perjured testimony, surely known to Campbell as a statement participant and hearing auditor, was available to Campbell previously and thus not proper matter for the CR 60.02 path.  The state so held, under its procedural rubric, and this is a proper basis for foreclosing habeas relief here.  Judge Ingram's analysis was sound; the objection fails.  Again, Judge Ingram probed for cause and prejudice, finding none.

Where a "state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson,* 111 S. Ct. 2546, 2564 (1991).  Campbell has not presented any evidence as to the cause for the defaults or that the failure to consider his claim would result in actual prejudice or a miscarriage of justice.  Per the recording of the suppression hearing, the details of or facts pertinent to the alleged perjury issue was fully revealed during the cross-examination of Detective Bowles— as Campbell recognizes in stating the issues was "preserved."  *See* DE 25 at 4.  Thus, the trial court

was presented with adequate evidence and arguments on any apparent inconsistencies.  As in Ground five, a procedural default in the state court bars this Court's review.

## V.    Certificate of Appealability

The Court may issue a certificate of appealability where a petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard requires the petitioner to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000).  The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement.  *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment as to each of [the petitioner's] claims").

Here, Campbell has not made a "substantial showing" as to any claimed denial of his rights.  His claims, as viewed through the analysis required, conclusively fail to clear the ADEPA's high bar.  For the reasons thoroughly discussed above, reasonable jurists would not debate the denial of habeas relief, both for the substantive and procedural reasons cited.  The Court thus **DENIES** a certificate of appealability.

## VI.    Conclusion

For the reasons discussed above, the Court **DENIES** Campbell's motion to withdraw his petition for writ of habeas corpus.  Further, the Court **OVERRULES** Campbell's objections to DE 23, **ADOPTS** DE 23, and **DENIES** the petition for a writ of habeas corpus.  The Court accordingly will enter a separate judgment.

This the 16th day of February, 2023.



**Signed By:**

**Robert E. Wier**

**United States District Judge**